**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 7, 2016

LETTER TO COUNSEL

      RE:    *Thomas Eugene Vigen, II v. Commissioner, Social Security Administration*;
               Civil No. SAG-15-2984

Dear Counsel:

    On October 1, 2015, Plaintiff Thomas Eugene Vigen, II petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Plaintiff's reply memorandum. (ECF Nos. 18, 19, 20). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

    Mr. Vigen protectively filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on October 1, 2010. (Tr. 227-34). He alleged a disability onset date of April 1, 2009. (Tr. 227, 229). His claims were denied initially and on reconsideration. (Tr. 134-49, 151-52). A hearing was held on September 24, 2013, before an Administrative Law Judge ("ALJ"), and a second hearing was held on May 9, 2014. (Tr. 48-108). Following the 2014 hearing, the ALJ determined that Mr. Vigen was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 21-40). The Appeals Council denied Mr. Vigen's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

    The ALJ found that Mr. Vigen suffered from the severe impairments of adjustment disorder, asthma, attention deficit hyperactivity disorder ("ADHD"), anxiety disorder, major depression, migraine headaches, and posttraumatic stress disorder. (Tr. 23). Despite these impairments, the ALJ determined that Mr. Vigen retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple, routine, repetitive tasks on a constant basis, can occasionally interact with

Case 8:15-cv-02984-SAG   Document 21   Filed 09/07/16   Page 2 of 5

*Thomas Eugene Vigen, II v. Commissioner, Social Security Administration*
Civil No. SAG-15-2984
September 7, 2016
Page 2

>co-workers, no interaction with the public, the claimant can experience frequent exposure to pulmonary dusts, fumes, odors and other pulmonary irritants[.]

(Tr. 25). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Vigen could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 38-40).

Mr. Vigen raises three arguments on appeal: 1) that the ALJ erred by failing to resolve the apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") pursuant to the Fourth Circuit's ruling in *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015); 2) that the ALJ failed to properly consider Mr. Vigen's fibromyalgia pursuant to Social Security Ruling ("SSR") 12-2p, rendering his RFC analysis unsupported by substantial evidence; and 3) that the ALJ erred in his application of the special technique in evaluating Mr. Vigen's mental impairments. Although not all of Mr. Vigen's arguments provide independent bases for remand, I have reviewed the ALJ's opinion under the Fourth Circuit's ruling in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), and find that remand is warranted because the ALJ failed to adequately account for Mr. Vigen's moderate limitation in concentration, persistence, or pace in his RFC assessment.

In his third argument, Mr. Vigen contends that the ALJ erred in his application of the special technique for evaluating mental impairments. Specifically, he avers that the ALJ's discussion of his finding that Mr. Vigen had a moderate limitation in concentration, persistence, or pace was conclusory and inadequate. Pl. Mem. at 24. Furthermore, Mr. Vigen asserts that "while the ALJ acknowledged some relevant evidence in his discussion of his RFC assessment, the ALJ referred to the evidence mostly in a neutral and non-evaluative way as part of a chronological narrative of plaintiff's medical treatment." Pl. Mem. at 25. I agree, and find that, for the same reasons, the ALJ's opinion also falls short of the standards set out in *Mascio* regarding limitations in concentration, persistence, or pace.

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. 732 F.3d at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.,* pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consists of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. Id. at § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area,

based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1620a(c)(2), 416.920a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* §§ 404.1620a(c)(4), 416.920a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.,* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (*quoting Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Even so, the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC. *Id.*

In the instant case, the ALJ found that Mr. Vigen had a moderate limitation in concentration, persistence, or pace. (Tr. 62). The ALJ noted Mr. Vigen's allegations that, "his ADHD and pain limit his ability to concentrate, understand and follow instructions," and that he "could complete tasks for very short simple things." (Tr. 26). The ALJ also cited medical evidence throughout the record regarding Mr. Vigen's ability to concentrate, his diagnosis of ADHD "inattentive type", and several medical opinions finding deficits in his concentration. (Tr. 25-38). However, the ALJ found that "the record surely indicates that the claimant is capable of engaging in activities of daily living, use of memory, socializing and concentration despite the symptoms of his conditions." (Tr. 38).

Ultimately, the ALJ's analysis is simply insufficient to permit adequate review. Without further explanation, I am unable to ascertain whether the ALJ truly believed Mr. Vigen to have moderate difficulties in concentration, persistence, and pace, instead of mild, or no difficulties, and how those difficulties restrict his RFC to "understand, remember and carry out simple, routine, repetitive tasks on a constant basis" without further limitation. In fact, use of the phrase "on a constant basis" seems to imply an enhanced ability to sustain work, outside of a normal work schedule containing regular breaks. In light of this inadequacy, I must remand the case to the Commissioner for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. On remand, the ALJ should explain why Mr. Vigen has moderate difficulties in concentration, persistence, and pace, and should impose an appropriate limitation(s) to address his difficulties. In so holding, I make no finding as to whether the ALJ's ultimate conclusion that Mr. Vigen was not disabled was correct or incorrect.

Turning to Mr. Vigen's other arguments, he first asserts that the ALJ erred by failing to identify a conflict between his finding that Mr. Vigen was able to "understand, remember and carry out simple, routine, repetitive tasks on a constant basis," and his finding that Mr. Vigen was capable of performing jobs with a GED reasoning level of two. Thus, Mr. Vigen argues that remand is warranted under the Fourth Circuit's recent holdings in *Pearson*, 810 F.3d at 208-10, and *Henderson v. Colvin*, 643 Fed. App'x 273 (4th Cir. 2016). Pertinent to this case, in *Pearson*, the Fourth Circuit held that an ALJ has a duty, independent of the VE, to identify any "apparent conflicts" between the VE's testimony and the Dictionary of Occupational Titles and to resolve any such conflicts. 810 F.3d at 208-10. In *Pearson*, the apparent conflict at issue involved the degree of reaching required for a job identified by the VE. *Id.* at *6-*7. In *Henderson,* the Fourth Circuit extended the *Pearson* reasoning to apparent conflict between the plaintiff's mental limitations and his ability to perform certain jobs. Specifically, the VE in that case testified that Henderson was capable of performing jobs with a GED reasoning level of two, even though he was limited to performing "simple one-to-two step tasks with low stress." 643 Fed. App'x at 276-77. The Fourth Circuit noted that "GED Reasoning Code 2 requires the employee to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'" *Id.* (citing <u>Dictionary of Occupational Titles</u>, 1991 WL 688702 (2008)). The Fourth Circuit held that there was an apparent conflict in the VE's testimony, and that his failure to identify and reconcile the conflict warranted remand.

The Commissioner contends that *Henderson* is not binding precedent, contains little persuasive authority or rationale, and should not be used to overturn other cases reaching the opposite conclusion. Def. Mot. at 9-11. Ultimately, because this case is being remanded on other grounds, I need not reach the *Henderson* issue. On remand, the ALJ should consider whether to address any apparent conflict presented by the VE's testimony, in light of the guidance provided by existing binding and non-binding precedent.

Finally, Mr. Vigen argues that the ALJ erred by failing to consider his medically determinable impairment of fibromyalgia pursuant to SSR 12-2p. Fibromyalgia is a particularly complicated diagnosis which the Agency acknowledges "can wax and wane so that a person may have 'good days' and 'bad days.'" SSR 12-2p. Thus, the Agency sets out specific criteria that

Case 8:15-cv-02984-SAG   Document 21   Filed 09/07/16   Page 5 of 5

*Thomas Eugene Vigen, II v. Commissioner, Social Security Administration*
Civil No. SAG-15-2984
September 7, 2016
Page 5

must be met in order for fibromyalgia to constitute a medically determinable impairment. *Id.* Specifically, an acceptable medical source must diagnose the claimant with fibromyalgia using the criteria outlined by the American College of Rheumatology ("ACR"). SSR 12-2p. The Agency allows for diagnosis of fibromyalgia according to either the 1990 or 2010 ACR criteria.[1] *Id.* In the instant case, the ALJ reviewed Mr. Vigen's allegations of "chronic pain," including his assertions that even on a day at home "his pain level was three or four if he was relaxing," and that he "did not shower as often as he should due to feeling worn out." (Tr. 26-27). The ALJ also cited Mr. Vigen's records, which showed "question of fibromyalgia on March 14, 2011 due to ongoing complaints of pain, which had previously been assessed as TMJ pain." (Tr. 32). The ALJ found that there was no evidence of trigger points in the record, and thus, that Mr. Vigen's fibromyalgia diagnosis did not meet the requirements set out by the ACR. While the ALJ clearly addressed the 1990 ACR diagnostic criteria for fibromyalgia, he failed to consider whether Mr. Vigen's diagnosis met the 2010 criteria. I note that the record contains some evidence that may be used to support a diagnosis on these criteria, including fatigue, issues with memory, depression, and anxiety. (Tr. 25-38). While the failure to address the 2010 ACR criteria alone may not warrant remand, since the case is being remanded on other grounds, the ALJ should review whether Mr. Vigen's fibromyalgia diagnosis meets the 2010 ACR criteria.

For the reasons set forth herein, Mr. Vigen's Motion for Summary Judgment (ECF No. 18) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 19) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

---

[1] The 1990 criteria include a history of widespread pain, at least 11 tender points, and evidence that other disorders that could cause the symptoms or signs were excluded. *Id.* The 2010 criteria include a history of widespread pain, repeated manifestations of six or more fibromyalgia signs, symptoms, or co-occurring conditions (including fatigue cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome), and evidence that other disorders that could cause the symptoms or signs were excluded.